UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL POSTIER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>LOUISIANA-PACIFIC CORP,<br><br>    Defendant. | Case No. 09-cv-03290-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT REGARDING DISPUTE RESOLUTION PROCEDURES AND CLAIMANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT.**<br><br>**Dkt. Nos. 115-16.** |

## I. INTRODUCTION

Plaintiff Carol Postier, individually and on behalf of all others similarly situated, commenced this class action lawsuit against Louisiana-Pacific Corporation ("LP" or "Defendant") on July 17, 2009. This Court entered an Amended Final Judgment and Order Approving Class Action Settlement that incorporated the parties' Class Action Settlement Agreement ("Settlement Agreement") by reference on March 4, 2011. Dkt. No. 88. The Settlement Agreement[1] offers relief in the form of monetary compensation or product replacement to claimants whose claims were approved in the Claim Process, depending on the type of product issues identified. The Settlement Agreement further provides for a Dispute Resolution Process through which claimants, dissatisfied with their awards, may seek review through binding arbitration.

In October of 2012, three such claimants, Christopher and Lisa Graham (the "Grahams") and Gail Young ("Ms. Young") (collectively, "Claimants"),[2] sought review of their awards after being denied any relief through the claim process. Subsequently, the Claimants were awarded a

---

[1] All capitalized terms are as defined in the Settlement Agreement.
[2] The defined term "Claimants" refers to the Grahams and Ms. Young, while "claimant" refers to the term claimant as defined in the Settlement Agreement.

1  Total Decking Replacement Offer by the Arbitrator James B. Laflin, Esq. LP, contending Mr.

2  Laflin refused to apply the terms of the Settlement Agreement, declined to honor his findings.

3  Claimants and Defendant filed Cross Motions to Enforce the Settlement Agreement. *See* Dkt.

4  Nos. 115-116.

5  The Court finds the Motions suitable for determination without oral argument pursuant to

6  Local Rule 7(1)(B), and vacates the hearing scheduled for Friday, June 21, 2013 at 9:30 a.m. For

7  the reasons explained below, Claimants' Motion to Enforce Settlement Agreement is GRANTED

8  in part and DENIED in part; Defendant's Motion to Enforce the Settlement Agreement Regarding

9  Dispute Resolution Procedures is GRANTED in part and DENIED in part.[3]

## II. BACKGROUND

### A. Settlement Agreement

The Settlement Agreement provides consumers experiencing problems with LP Decking and Railing the opportunity to seek remedy through a comprehensive Claims Program. Upon receipt of a Claim, the Claims Office dispatches a previously agreed upon Independent Investigator ("Investigator") to assess whether the claimant's Decking and/or Railing suffers from Damage and/or Deterioration. Settlement Agreement § II (C)(6) ("Sett. Agreement"). Pursuant to the Settlement Agreement, the Inspector "shall apply the definitions of Deterioration and Damage contained in [the] Settlement." *Id.* at § II (C)(6)(d). The Inspector is also required under the Settlement Agreement to "note any observations regarding Damage, Deterioration, Improper Construction, Improper Installation and/or Improper Use relating to the Deck Structure in the findings transmitted to the Claims Office." *Id.* at § II (C)(6)(e). The Inspectors findings are transmitted to the Claims Office in the form of a Final Inspection Report. *Id.* at § II(C)(7). BrightClaim, Inc. ("BrightClaim") is listed in the Settlement Agreement as the agreed upon Independent Inspector. *Id.* at § II(A)(33).

Further, under the Settlement Agreement, the remedy available to claimants is determined by whether the LP product at issue exhibits Damage and/or Deterioration. The Settlement

---

[3] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

1 Agreement provides that "[w]here the Final Inspection Report identifies any *Deterioration* on any

2 Decking . . . LP will provide a Total Decking Replacement Offer to the Class Member." *Id.* at

3 II(C)(9)(a) (emphasis added). "The Total Decking Replacement Offer will be the sole remedy

4 available to the Class Member relating to the Decking System in these situations." *Id.*

5 Deterioration is defined under the Settlement Agreement as any "premature oxidation of the

6 polymer in the boards which is observable as any visible surface flaking, visible crumbling, or

7 visible peeling which presents a risk that the boards will break under normal use with the Claim

8 Period …" *Id.* at § II(A)(21). The Settlement Agreement further provides that "the conditions

9 listed as Damage are not, by themselves, Deterioration," and that "Deterioration does not include

10 Cosmetic issues and conditions caused by Improper Use." *Id.*

11 Also under the Settlement Agreement, "Damage means, and is explicitly limited to, Core

12 Gaps, Cupping, Crowning, Splitting, Termite Damage, and Warping." *Id.* at § II(A)(20). Damage

13 does not include, "Cosmetic Issues and conditions caused by Improper Construction, Improper

14 Installation, and/or Improper use." *Id.* When a finding of *Damage* is reached, "LP will offer

15 Claimants $3.78 per linear foot for any Decking manifesting any Damage, less a reasonable use

16 deduction of ten percent for each year since the Installation Date." *Id.* at § II(C)(10)(a).

17 In the event that a Claimant is dissatisfied with her Settlement Package, the Settlement

18 Agreement prescribes a Dispute Resolution Process. *See* Sett. Agreement at § IX. Specifically,

19 the Settlement Agreement provides that "[a]ny disputes between the Parties that arise out of the

20 Settlement may be submitted by LP, the Claims Office, Claimant, or Class Counsel to a

21 Settlement Administrator for final, binding resolution." *Id.* at § IX(A). The Settlement

22 Administrator is defined under the Settlement Agreement as the "third party agreed upon by the

23 Parties to resolve disputes under this Settlement." *Id.* at § II(A)(62).

24 Under the Settlement Agreement, "[b]efore any dispute may be submitted to the Settlement

25 Administrator, the party intending to submit the dispute shall make a good faith effort to resolve

26 the dispute." *Id.* at IX(B). "If the dispute is not resolved by the Parties, then only evidence

27 exchanged during that negotiation between the Parties may be presented to, or considered by, the

28 Settlement Administrator." *Id.* at § IX(C).

3

1    Under the Settlement Agreement, "[d]isputes between the Parties that arise out of the
2    Settlement may not be raised with the Court unless the Settlement Administrator violates the law
3    or refuses to apply the terms of the Settlement." *Id.* at § IX(A). "The Settlement Administrator
4    must apply the terms of this Settlement to any dispute and may not provide relief or make any
5    award that is inconsistent with the Claims Program." *Id.* at § IX(H).

### B.   The Grahams' Claim

After submitting Claims to the Claims Administrator, the Grahams' deck was inspected on June 15, 2011 by the Independent Investigator, BrightClaim. Dkt. No. 116-7 (Declaration of James E. Weatherholtz in Support of Defendant's Motion to Enforce the Settlement Agreement Regarding dispute Resolution Procedures) ("Weath. Decl.") Ex. F at 3. In the Final Inspection Report, the Independent Inspector observed that:

> There are two areas where a couple of boards have heaved together and come up from the joists. There isn't adequate ventilation under this deck; there is really only one side that has enough space for air to get through. Two of the sides are against the house and the third side is the stairs where there is fascia and risers that are enclosing the deck. There is considerable mold throughout this deck. It is also on the railing components, but not to the same extent.

*Id*. The cover letter attached to the report by the LP Claims Office states that "the Independent Inspector did not find any Damage or Deterioration on [the] LP decking or railing products." *Id.* at 2. Also included in the Final Inspection report is a table describing the Inspector's findings, as well as photographs pertaining to a legend that illustrates the Inspector's findings. However, there is no explanation provided to discern the pertinent information in the table, and the photographs presented to the Court are unviewable. *Id*. at 4-22.

Dissatisfied with the Inspectors findings and the Claims Office's subsequent denial of their claim, the Grahams filed an appeal by letter dated December 28, 2011.

On January 28, 2013, arbitrator James B. Laflin, Esq. issued a decision stating that the damage of the WeatherBest decking product was sufficiently "severe and extensive" as to warrant total replacement, and ordered LP to provide a "total decking replacement offer" to the Grahams. Weath. Decl. Ex. G at 3. According to Mr. Laflin, his decision was based in part on the following findings:

4

> That the LP WeatherBest decking product performed properly and as reasonably expected for a period of approximately five (5) years, until 2010. That in 2010 the WeatherBest product failed due to product defect, and not because of incorrect installation (e.g. incorrect gapping) or inadequate ventilation as argued by LP. That the damage to the deck is sufficiently severe and extensive as to warrant total replacement.

*Id*. at 2-3. Pursuant to Mr. Laflin's Order, LP had 30 days from the date of its entry to provide a "total decking replacement offer." *Id*. at 3. To date, LP has refused to follow Mr. Laflin's order and confer a Total Decking Replacement Offer to the Grahams.

### C. Ms. Young's Claim

Ms. Young's deck was inspected by BrightClaims on September 23, 2011. Weath. Decl. Ex. H at 3. In its Final Inspection Report, BrightClaims commented:

> Deck #1 – Front Deck – I called the contractor and the contractor said he couldn't remember if he made the grooves or they came like that. He did say the decking is LP Weather Best. Several boards on the deck didn't have the grooves and appeared to be LP. Uncertain if the grooves were manufactured because the warping and cupping made them appear uneven and unmanufactured.

*Id.* The cover letter attached to the report from LP's Claims Office states that "the Independent Inspector did not find any Damage or Deterioration on [the] LP decking or railing products." *Id*. at 2. Like with the Grahams' claim, there are photographs and a table included in the Inspector's report, but no explanation or legend provided to discern the pertinent information. *Id*. at 4-14.

Ms. Young subsequently appealed to the Settlement Administrator James B. Laflin Esq. On January 31, 2013, Mr. Laflin issued a decision stating that the condition of the WeatherBest decking product was sufficiently "severe and extensive" as to warrant total replacement, and ordered LP to provide a "total decking replacement offer" to Ms. Young. Weath. Decl. Ex. I at 3. According to Mr. Laflin, his decision was based, in part, on the following findings:

> That BrightClaim inspected the property on September 23, 2011, and found no damage to the WeatherBest fascia board (some 57 pieces). However, pervasive cupping, warping, buckling and splitting are documented with respect to the WeatherBest decking material. That BrightClaim noted site conditions in existence at the time of its inspection including insufficient gapping, incorrect joist spacing and the existence of gooves [sic] (kerfs) cut longitudinally in some of the boards. BrightClaim's inspection report does not connect or relate any of these conditions as being the *causes* of the cupping, warping, buckling and splitting exhibited in the deck. That the condition of the WeatherBest decking

1
2
   product constitutes the basis of a valid compensable claim under the terms of the Settlement Agreement, and is sufficiently severe and extensive as to warrant total replacement.

3 *Id.* at 2-3 (emphasis in the original). Pursuant to Mr. Laflin's Order, LP had 30 days from the date

4 of its entry to provide a "total decking replacement offer." *Id.* at 3. To date, LP has refused to

5 follow Mr. Laflin's order and confer a Total Decking Replacement Offer to Ms. Young.

### D.     Claimants' Motion to Enforce the Settlement Agreement

Claimants seek this Court's assistance in enforcing the Settlement Administrator's awards. Claimants contend that the Settlement Administrator did not "refuse" to apply the terms of the Settlement Agreement or intend to harm or prejudice LP, and therefore, LP is responsible for complying with the orders awarding Total Decking Replacements. Dkt. No. 115. (Notice of Motion and Motion to Enforce Settlement and Memorandum of Points and Authorities) ("Claimant's Motion to Enforce") at 5. At its base, Claimants argue that only refusal, and not failure to apply the terms of the Settlement Agreement, warrants disturbing the Settlement Administrator's findings. *Id.* at 5-6. Claimants do not contend that Deterioration existed on either of the Claimants Decking and/or Railing. *Id.* at 5-6.

Claimants also seek orders: (1) estopping LP from unilaterally terminating the Settlement Administrator; (2) estopping LP from attempting to prevent evidence of original construction in the appeal; and (3) sanctioning LP for having "intentionally, knowingly, and willfully breached" the Settlement Agreement. *Id.* at 6-7. Claimants argue that nothing in the Settlement Agreement allows a party to unilaterally terminate the agreed upon Settlement Administrator and that allowing a party to do so would undermine the purpose of the Dispute Resolution Process. *Id.* at 6. Claimants further argue that LP has indicated it will, in the future, seek to prevent the inclusion of evidence pertaining to original decking construction at arbitration. *Id.* Plaintiff contends that under the Settlement Agreement, any evidence is permitted provided that the evidence was first shared with opposing counsel. *Id.* at 6-7.

In its response to Claimants' motion, Defendant argues that the Settlement Administrator serves subject to the continued consent of both parties, and LP is therefore entitled to withdraw its consent at any particular moment. Dkt. No. 120 (Defendant's Response in Opposition to

1  Plaintiff's Motion to Enforce the Settlement Agreement) (Defendant's Opp.) at 3-4. Defendant
2  also argues that the issue of evidence preclusion is not ripe for review because LP has not objected
3  to the Settlement Administrator's decisions on the basis of his findings related to installation. *Id*.
4  at 4-5. In any event, Defendant argues that the Settlement Agreement does not contemplate
5  consideration of evidence from original construction, as the Agreement was intended to obviate
6  any such inquiry in favor of an objective application of the Agreement's terms to the existing
7  conditions at the time of inspection. *Id*.

### E. Defendant's Motion to Enforce the Settlement Agreement

Defendant argues that the Settlement Administrator must "apply the terms of the Settlement Agreement to any dispute" and "may not provide relief or make any award that is inconsistent with the Claims Program." Dkt. No. 116 (Defendant's Motion to Enforce the Settlement Agreement Regarding Dispute Resolution Procedures) ("Defendant's Motion to Enforce") at 6. Thus, in Defendant's view, the Settlement Administrator erred in awarding Claimants Total Decking Replacement Offers because only a finding of severe and extensive Damage, not Deterioration, was reached by Mr. Laflin for the Grahams and Ms. Young. *Id.* at 9. Defendant therefore asks the Court for an order vacating the portions of the Settlement Administrator's decisions which depart from the express terms of the Settlement Agreement. Defendant further asks the Court to order that the neither the Grahams nor Ms. Young are not entitled to a Total Decking Replacement Offer on the basis that no Deterioration has been found.

In their response, Claimants argue that the evidence in the record reveals that the Settlement Administrator applied the terms of the Settlement Agreement "to the best of his ability." Dkt. No. 119 (Opposition to Defendant's Motion to Enforce Settlement Agreement Regarding Dispute Resolution Procedures) ("Claimants' Opp.") at 3. Claimants further argue that no evidence exists in the record that suggests the Settlement Administrator erred "intentionally, willfully, or with the intent to harm or otherwise prejudice LP." *Id.*

### III. DISCUSSION

#### A. Legal Standard

This Court has exclusive and continuing jurisdiction over this Action and the Parties to it,

7

1    including all Class Members, to the full extent necessary to enforce the Settlement Agreement.
2    *See* Dkt. No. 88 (Amended Final Judgment and Order Approving Class Action Settlement). The
3    Settlement Agreement provides that "disputes between the Parties that arise out of the Settlement
4    may not be raised with the Court unless the Settlement Administrator violates the law or refuses to
5    apply the terms of the Settlement." Sett. Agreement at at § IX(A).

6    Claimants cite to *Cable Connection, Inc. v. DirectTV, Inc.*, 44 Cal. 4th 1334 (2008) as
7    support for their contention that arbitration findings may not be disturbed except in circumstances
8    involving fraud or misconduct. In this case, however, the terms of the Settlement Agreement
9    provide that this Court may intervene when the Settlement Administrator violates the law or, as
10   here, refuses to apply the terms of the Settlement Agreement. Sett. Agreement at § IX(H).

11   **B.     Analysis**

12   **1.     Whether the Settlement Administrator Refused to Apply the Terms of
13          the Settlement Agreement**

14   The Settlement Agreement provides that the Total Replacement Offer is available when a
15   finding of Deterioration is reached. *Id.* at II § (C)(9). The Settlement Agreement does not provide
16   for a Total Replacement Offer when there is only a finding of damage. *Id.* at II § (C)(10). The
17   Independent Inspector, BrightClaims, did not include any findings of Damage in the Final
18   Inspection Report for the Grahams' deck. Weath. Decl. Ex. F. Nor do Claimants argue in their
19   briefs that a finding of Deterioration was reached. *See* Claimants' Motion to Enforce. The
20   Settlement Administrator, Mr. Laflin, did not make a finding of Deterioration. Weath. Decl. Ex.
21   G. Nevertheless, Mr. Laflin awarded the Grahams a Total Replacement Offer upon finding that
22   the damage to their deck was "sufficiently severe and extensive." *Id.* Mr. Laflin's award of a
23   Total Replacement Offer to the Grahams, where no finding of Deterioration was made, was
24   directly contrary to the terms of the Settlement Agreement.

25   Similarly, nowhere in Ms. Young's Final Inspection Report, or in Mr. Laflin's findings
26   concerning Ms. Young's claim, is Deterioration mentioned. Weath. Decl. Exs. H-I. Nevertheless
27   Mr. Laflin again observed that the Damage to Ms. Graham's deck was "severe and extensive"
28   enough to merit a Total Decking Replacement Offer. Weath. Decl. Ex. I at 3. This remedy is not

available under the Settlement Agreement in the absence of Deterioration as defined.

In sum, the Court finds that the Settlement Administrator "refuse[d] to apply the terms of the Settlement." Sett. Agreement § IX(A). Therefore, the Court vacates the Settlement Administrator's award of a Total Decking Replacement Offer, and grants Defendant's Motion to that extent. Nevertheless, the Court denies Defendant's motion to the extent LP seeks an order proclaiming that the Grahams' and Ms. Young are not entitled to a Total Decking Replacement Offer on the basis of the Inspector's findings. The matter is remanded to the Settlement Administrator for proceedings consistent with this Order.[4]

### 2. Whether LP May Prevent Evidence of the Original Deck Construction to be Considered by the Settlement Administrator

The Settlement Agreement provides that "disputes between the Parties that arise out of the Settlement may not be raised with the Court unless the Settlement Administrator violates the law or refuses to apply the terms of the Settlement." Sett. Agreement at § IX(A). Neither party contends that the Settlement Administrator refused to apply the terms of the Settlement Agreement with regard to what evidence is properly submitted to the Settlement Administrator. Therefore, this issue is not properly before the Court.

### 3. Whether LP may Unilaterally Terminate the Settlement Administrator

The Court must nevertheless decide whether LP is within its rights under the Settlement Agreement to unilaterally terminate the Settlement Administrator. Nothing in the Settlement Agreement directly addresses the current issue of what to do when one Party becomes dissatisfied with the previously agreed upon Settlement Administrator. Nevertheless, if a single party may unilaterally terminate the Settlement Administrator, the efficacy of the Dispute Resolution Process is undermined. Accordingly, the Court finds that, under the Settlement Agreement, no party may withdraw its agreement to the Settlement Administrator without consent of the other party.

## IV. CONCLUSION

For the foregoing reasons, Claimants' Motion to Enforce the Settlement Agreement is

---

[4] The Court finds no basis for sanctioning LP under the terms of the Settlement Agreement or 28 U.S.C. § 1927.

9

1  GRANTED in part and DENIED in part; Defendant's Motion to Enforce the Settlement
2  Agreement Regarding Dispute Resolution Procedures is GRANTED in part and DENIED in part.
3      IT IS SO ORDERED.
4  Dated: June 19, 2013

_____
JOSEPH C. SPERO
United States Magistrate Judge

.