UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL POSTIER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>LOUISIANA-PACIFIC CORP,<br><br>    Defendant. | Case No. 09-cv-03290-JCS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND ENJOIN THE PROSECUTION OF CLAIMS BY CLASS MEMBERS**<br><br>**Dkt. No. 129** |

## I. INTRODUCTION

Before the Court is a Motion to Enforce Settlement Agreement and Enjoin Prosecution of Claims by Class Members (hereafter, "Motion") filed by Defendant Louisiana-Pacific Corporation (hereafter, "Defendant" or "LP"). By way of this Motion, LP seeks to enjoin alleged Class Members from prosecuting claims that were released by the court-approved Class Settlement Agreement (hereafter, "Settlement"). LP contends that Cheapskate Charlie's, LLC, Cabinets To Go, Inc., Boston Cedar, Inc., and Cal Garland d/b/a/ Meadow River Lumber (collectively, "the Michigan Plaintiffs") filed a lawsuit in Michigan state court in violation of the exclusive remedy provision of the Settlement. The Court held a hearing on the Motion on January 17, 2014. Although the Michigan Plaintiffs did not file a written response to LP's Motion, counsel for Boston Cedar, Inc. specially appeared at the hearing to represent all the Michigan Plaintiffs. For the reasons explained below, the Motion is GRANTED.[1]

---

[1] The parties, which include LP and the Class Representative Carol Postier, have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). The fact that the Michigan Plaintiffs have not consented does not deprive this Court of jurisdiction. Rather, three circuit courts have held that unnamed class members who do not intervene in the lawsuit "are not 'parties' before the court in the sense of being able to direct the litigation," and therefore, their consent is not required for a magistrate judge to exercise

## II. BACKGROUND

### A. The Class Action Settlement

On March 4, 2011, this Court entered a final judgment and order approving the Settlement between LP and the Class Members.[2] *See* Dkt. No. 88 ("Amended Final Judgment and Order Approving Class Action Settlement") ("Final Approval Order"). Under the Final Approval Order, this Court has "exclusive and continuing jurisdiction over this Action and the Parties to it, including all Class Members, to the full extent necessary to enforce the Settlement." *Id*. at 6, ¶ 9.

The Settlement establishes a Claims Program by which Class Members submit claims for reimbursement of decking and/or railing materials manufactured by LP on or before October 29, 2007. Dkt. No. 130-2, 32-65 ("Settlement Agreement") at 16-23. As one part of the Claims Program, a Class Member may submit a claim for *uninstalled* decking and/or railing, and will be reimbursed for the uninstalled product according to criteria discussed below. *See* Settlement at 23, § III.C.18.

The Class Members are defined in the Settlement as "[a]ll Persons who at any time own or owned Decking or Railing sold under the brand names LP, WeatherBest, ABTCo, and Veranda." *Id*. at 5, § II.A.11. Those who timely opted out of the Settlement, as well as those who had initiated legal proceedings prior to the date of the Court's preliminary approval of the settlement, are not Class Members. *Id*. LP argues that the Michigan Plaintiffs are Class Members because they owned Decking product under the brand name of WeatherBest and did not opt out of the class.

Class Members release all claims against LP that arise out of the subject matter of the

---

jurisdiction under 28 U.S.C. § 636(c). *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir. 1998); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012) ("We agree with the Seventh Circuit that unnamed class members are not "parties" within the meaning of § 636(c)(1), and that their consent is not required for a magistrate judge to exercise jurisdiction over a case."); *Day v. Persels & Associates, LLC*, 729 F.3d 1309, 1316 (11th Cir. 2013) ("We conclude, as have the Third and Seventh Circuits, that absent class members are not 'parties' whose consent is required for a magistrate judge to enter a final judgment under section 636(c).").

[2] Capitalized terms are defined in the Settlement and given the same meaning as in the Settlement.

litigation. The Settlement provides that Class Members "shall be deemed to … release and forever discharge LP of and from any and all Settled Claims." *Id*. at 25, § IV.A. The Settlement defines "Settled Claims" broadly to include "every claim … that the releasing parties now have, have had in the past or may have in the future against LP arising out of the subject matter of the Action…." *Id*. at 12, § II.A.60.

The Settlement also contains an "Exclusive Remedy" provision which provides that "[t]his Settlement and the relief provided herein shall be the sole and exclusive remedy for any and all Settled Claims of Class Members against LP." *Id*. at 28, § VI.B. Under this provision, "Class Members agree to the dismissal of any action or proceeding pending against LP to the extent any such action or proceeding seeks recovery for any Settled Claims." *Id*., § VI.C.

### B. Sale of Recalled Decking to Cal Garland d/b/a Meadow River

Prior to its settlement with the Class Members, on or about May 13, 2009, LP recalled certain decking product pursuant to an agreement with the federal Consumer Product Safety Commission. Weatherholtz Decl. ¶ 5. On November 9, 2009, LP entered into an agreement with Cal Garland, doing business as Meadow River Lumber Company ("Meadow River"), under which LP would sell the recalled decking product to Meadow River. *See* Weatherholtz Decl., Ex. D ("Meadow River Contract").

The agreement is memorialized in a letter written by Cal Garland on behalf of Meadow River. *See id*. In the letter, Meadow River agrees "to transport and dispose of the Material," specifically writing that the purchased decking product will be "reground" in the facilities of Greenland Composites, Inc. at 10175 Webb Way, Greenland, Arkansas 72737. *Id.* LP issued two invoices that memorialize sales to Meadow River of "recalled WeatherBest decking" in the amounts of $3,301.68 and $5,416.38. Weatherholtz Decl. ¶ 5 and Ex. E (invoices). Both invoices specifically provide:

> Material is not suitable for use as decking material or for use in any load bearing application[.] Garland covenants and agrees to grind, burn, or landfill the material in compliance with all applicable laws…. LP MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE MATERIAL.

Weatherholtz Decl., Ex. E.

1    LP argues that Meadow River reneged on its obligation to reground and dispose of the
2    recalled decking.  As discussed further below, the Michigan Plaintiffs allege in their complaint
3    that Meadow River sold the decking to Boston Cedar, Inc., which sold the decking to Cabinets To
4    Go, Inc., which, in turn, sold the decking to Cheapskate Charlie's LLC ("Cheapskate").  *See*
5    Weatherholtz Decl., Ex. B (complaint in *Cheapskate Charlie's LLC et al. v. Louisiana Pacific*
6    *Corp*., Case No. 13-010922-CB) ("Michigan Complaint").  Cheapskate allegedly purchased the
7    decking for $329,932.80, which was allegedly the same price paid by Cabinets To Go, Inc. to
8    Boston Cedar, Inc.  *Id*.

### C.    Cheapskate Submits Claims to LP pursuant to Settlement

In the summer of 2012, Cheapskate submitted two claims to LP for uninstalled decking, seeking to be reimbursed under the Settlement for $329,932.80, the actual price Cheapskate paid to Cabinets To Go, Inc.  On September 19, 2012, LP sent a representative to inspect the decking product in Cheapskate's possession.  On December 21, 2012, LP presented a settlement package in which LP offered to refund Cheapskate $63,385.80, which constitutes $0.15 per linear foot of the decking material in Cheapskate's possession.  *See* Weatherholtz Decl. Ex. F.

LP wrote a letter to Cheapskate explaining that under Article II.C.18 of the Settlement, Cheapskate should only receive $0.15 per linear foot of uninstalled decking, and not the actual price it paid to Cabinets To Go, Inc.  Article II.C.18 provides:

> For uninstalled Decking and/or Railing, LP will offer to buy back any Decking and/or Railing at the actual price paid by the Claimant provided that the Claimant can prove the price paid by an invoice from an LP distributor or retailer.  If the Claimant can prove the price paid by the Claimant in good faith to an entity other than a LP distributor or retailer, LP will offer to buy back any Decking and/or Railing at 50% of the actual price paid.  In the absence of that proof, LP will offer to buy back and Decking and/or Railing at fifteen cents per linear foot ($0.15/LF).

Settlement at 23, § II.C.18.

In the letter, LP explained that Cheapskate did not prove that it purchased the decking material from a LP distributor or retailer, and therefore, is not entitled to 100% of actual price paid.  Weatherholtz Decl., Ex. G.  LP also explained that Cheapskate did not prove that it purchased the decking in "good faith" from an entity other than a LP distributor or retailer, and

therefore, is not entitled to 50% of the actual price paid. *Id*. LP concluded that it would process the claim for $0.15 per linear foot of the decking material in Cheapskate's possession for a total offer of $63,385.80. *Id*.

The Settlement does not define "good faith" for purposes of determining whether a claimant in possession of uninstalled decking is entitled to 50% of the actual price paid. LP explained in the letter, however, that because the price Cheapstake allegedly paid "far exceeds the amount actually paid by the first-tier purchaser from LP for the same product," Cheapskate did not purchase the decking material in good faith. *Id*. LP wrote:

> LP sold recalled WeatherBest decking product in 2009 to Meadow River under strict conditions of use.
>
> Specifically, Meadow River was expressly required to transport the product directly to Greenland, Arkansas so that it could be re-ground at the Greenland Composites, Inc. facility located there. The product was not placed into the stream of commerce by LP for the purposes for which your client allegedly purchased it; in fact, LP contracted with Meadow River specifically to avoid that possibility. As a result of the above, Cheapskate Charlie's is unable to satisfy the proof requirements necessary to qualify for 50% of the actual price paid. To the extent Cheapskate Charlie's actually paid standard pricing to Meadow River or one of tis successors for this recalled Decking product, then I refer you to one of those entities for the reimbursement you seek.

*Id*.

### D. The Michigan Lawsuit

On August 27, 2013, the Michigan Plaintiffs filed a lawsuit in the Circuit Court for the County of Wayne, State of Michigan. The Michigan Plaintiffs alleged that "[t]he Plaintiff, Garland did purchase directly from LP WeatherBest Decking materials … which were in turn sold to Boston Cedar, and in turn to Cabinets to Go, and in turn to Cheapskate Charlie's." Michigan Complaint ¶ 21. The Michigan Plaintiffs alleged that Cheapskate paid $329,932.80 for the decking material, which was the same price Boston Cedar paid to Cabinets To Go. *Id*. ¶ 22. They alleged that LP's offer to pay 15% of $329,932.80 was unacceptable.[3] *Id*. ¶ 24.

---

[3] The Michigan Plaintiffs mistakenly alleged that LP only offered to pay 15% of the $329,932.80 purchase price. LP actually offered to pay $0.15 per linear foot of the decking in Cheapskate's possession. *See* Weatherholtz Decl., Ex. F.

The Michigan Plaintiffs requested the following declaratory relief:

> A. Declaring that the Plaintiffs are Class Members in the underlying lawsuit Settlement Agreement and entitled to recover the actual amount paid for the decking materials; or
>
> B. Declaring that the Plaintiffs are not Class Members in the underlying lawsuit and are entitled to pursue recovery for their claims of breach of warranty (express and implied) and claims for fraudulent misrepresentation as to the subject decking materials[.]

*Id*. at 8. The Michigan Plaintiffs also asserted claims for breach of warranty, negligent misrepresentation, fraud and unjust enrichment. The Michigan Plaintiffs did not plead any facts to suggest their claims are not "Settled Claims" as defined by the Settlement. The fraud claim is based on misrepresentations regarding the product quality of the decking material, which covered by the Settlement. *See* Michigan Complaint at 11-12.

LP removed the lawsuit to the United States District Court for the Eastern District of Michigan, and the case was assigned to the Honorable Avern Cohn. *See Cheapstake Charlie's LLC, et al. v. Louisiana-Pacific Corp.*, Civil Action No. 2:13-cv-14086-AC-LJM (E.D. Mi.). Once in federal court, LP moved to dismiss the case on the basis that this Court retains exclusive jurisdiction over disputes arising out of the Settlement. *See id.* at Dkt. No. 2 (LP's Motion to Dismiss); *see also* Weatherholtz Decl., Ex. C.

The Michigan Plaintiffs opposed LP's motion to dismiss. *Id*. at Dkt. No. 6. They argued that their claims were not precluded by the Settlement, as the claims arise from material misrepresentations made by an LP representative over a year after the Settlement was entered. *Id*. at 2. They argued that Stanley Oliver, a Production Supervisor of LP at its plant in Selma, Alabama informed Boston Cedar that decking material from the Selma Plant was not included in the recall. *Id*. at 3. While the Michigan Plaintiffs had alleged fraud in the complaint, this specific allegation regarding Oliver's alleged fraud was not averred.

On December 11, 2013, Judge Cohn ruled on LP's motion to dismiss by transferring the case to the Northern District of California. *See id*. at Dkt. No. 11. The court wrote that LP's motion to dismiss was "based on a forum selection clause−the exclusive jurisdiction provision in the Settlement Agreement." *Id*. at 5. Because the proper vehicle for dismissing a case based on a

forum selection clause was a source of debate among courts in the Sixth Circuit, the court preferred to transfer the case to the Northern District of California, as that possibility had been contemplated by both parties. *Id*. at 6. In considering whether transfer was appropriate under 28 U.S.C. § 1404(a), the court wrote:

> At its core, this is a dispute over application of a settlement agreement arising [out of] litigation in the Northern District of California. The district judge who presided over the litigation retained jurisdiction over any dispute over the settlement. This is such a dispute. For the interests of justice, this case belongs in the Northern Division, not in this district.

*Id*. As of this writing, the case has been transferred to the Northern District of California and assigned to Magistrate Judge Maria Elena James. *See Cheapskate Charlie's LLC et al v. Louisiana-Pacific Corporation*, No. 13-05888-MEJ, Dkt. No. 12.

### E.  Motion to Enforce Settlement Agreement

Around the time LP filed a motion to dismiss in the Eastern District of Michigan, LP filed the instant Motion to Enforce the Settlement in this Court. *See* Dkt. No. 129 (Defendant's Notice of Motion, Motion, and Supporting Memorandum of Law to Enforce Settlement Agreement and Enjoin Prosecution of Claims by Class Members in Another Forum) ("Motion"). In the Motion, LP asks the Court to enjoin the Michigan Plaintiffs from asserting any Settled Claims against LP that are barred by the exclusive remedy and release provisions of the Settlement. LP also asks the Court to award it attorneys' fees.

## III.  DISCUSSION

This Court has "exclusive and continuing jurisdiction over this Action and the Parties to it, including all Class Members, to the full extent necessary to enforce the Settlement." Final Approval Order at 6, ¶ 9. The Final Approval Order incorporates the Settlement, which also provides that "[t]he Court shall retain exclusive and continuing jurisdiction over the Action, the Parties, and Class Members, to interpret and enforce the terms, conditions , and obligations of this Settlement." Settlement at 29, § VI.D. The Settlement Agreement provides:

> This Settlement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding which

7

> may be installed, prosecuted or attempted in breach of this Settlement. *If the court in which such an action is pending declines to grant such an injunction, LP may seek an injunction from the Court in this Action.*

Settlement at 26-27, § IV.I. Accordingly, this Court has jurisdiction to enforce the terms of the Settlement, and to determine whether the Michigan Plaintiffs should be enjoined from pursuing their claims.

This Motion turns on two questions: (1) are the Michigan Plaintiffs Class Members, and (2) are they seeking to assert Settled Claims against LP in violation of the Settlement. These questions before this Court are narrow. The Court does not have jurisdiction to decide, for instance, whether or not LP should have offered more than $63,385.80 to Cheapskate. The Settlement includes provisions governing the proper dispute resolution procedures, which requires a claimant like Cheapskate to raise claims with the Settlement Administrator. The Settlement provides that "disputes between the Parties that arise out of the Settlement may not be raised with the Court unless the Settlement Administrator violates the law or refuses to apply the terms of the Settlement." Settlement at 30, § IX.A. Thus, if the Michigan Plaintiffs are Class Members, the proper remedy after receiving an unsatisfactory settlement offer was an appeal to the Settlement Administrator.

The Settlement provides that Class Members "shall be deemed to … release and forever discharge LP of and from any and all Settled Claims." *Id*. at 25, § IV.A. The Settlement further provides that it is "the sole and exclusive remedy for any and all Settled Claims of Class Members against LP," and under the exclusive remedy provision, all Class Members agreed "to the dismissal of any action or proceeding pending against LP to the extent any such action or proceeding seeks recovery for any Settled Claims." *Id*. at 28, § VI.B-C. Accordingly, if the Michigan Plaintiffs are Class Member seeking to assert Settled Claims against LP, then LP is entitled to an injunction precluding the Michigan Plaintiffs from doing so.

The Settlement broadly defines "Class Members" as "[a]ll Persons who *at any time own or owned* Decking or Railing sold under the brand names LP, WeatherBest, ABTCo, and Veranda." Settlement at 5, § II.A.11 (emphasis added). While the words "own or owned" implies those who owned decking or railing material at or before the time the Settlement was entered, the preceding

words "at any time" suggests that the Class includes those who owned after the Settlement was entered as well. *See id*. This result is not as peculiar as it may seem: the Class is extended to those who "at any time" own the identified products "sold" under certain brand names. There is no "at any time" modification attached to the verb "sold." The natural meaning of this sentence is that the Settlement covered those materials "sold" to anyone before the date of the settlement, even if they are later owned by a subsequent purchaser. This also makes common sense: persons who bought the subject products from those who purchased them before the Settlement bought subject to the limitations of the Settlement. Any other resolution would build in any easy way to circumvent the Court approved resolution. Accordingly, any of the subject products that were first sold before the Settlement are subject to its terms.

In the complaint filed in Michigan state court, the Michigan Plaintiffs alleged: "The Plaintiff, Garland did purchase directly from LP WeatherBest Decking materials … which were in turn sold to Boston Cedar, and in turn to Cabinets to Go, and in turn to Cheapskate Charlie's." Michigan Complaint ¶ 21. The first sale, to Garland, occurred on November 9, 2009−long before the Settlement. Weatherholtz Decl. Ex. D. The Michigan Plaintiffs alleged that each of them had owned decking sold under the brand name of WeatherBest, a covered product, and that they purchased the products first sold to Garland. Therefore, the Michigan Plaintiffs are "Class Members" as defined by the Settlement.

The next question is whether the Michigan Plaintiffs seek to assert Settled Claims. The Settlement defines "Settled Claims" as "every claim … that the releasing parties now have, have had in the past or may have in the future against LP arising out of the subject matter of the Action…." *Id*. at 12, § II.A.60. The Michigan Plaintiffs filed the lawsuit only after Cheapskate submitted a claim through the Settlement's Claims Program and was disappointed with LP's settlement offer. The Michigan Plaintiffs seek $329,932.80 as the price paid by Cheapskate for the uninstalled decking material. The Settlement includes a specific provision regarding reimbursement for uninstalled decking material. Settlement at 23, § II.C.18. While the complaint alleges claims for breach of warranty, negligent misrepresentation, fraud and unjust enrichment, the factual allegations supporting these claims all pertain to alleged misrepresentations regarding

the product quality of the decking material.  *See* Michigan Complaint at 11-12.  Accordingly, the claims asserted by the Michigan Plaintiffs in the complaint filed in Michigan state court are Settled Claims as defined by the Settlement.

In response to LP's motion to dismiss filed in the Eastern District of Michigan, the Michigan Plaintiffs argued that their claims were not precluded by the Settlement, as their claims arose from material misrepresentations made by Stanley Oliver, a Production Supervisor at LP's plant in Selma, Alabama, over a year after the Settlement was entered.  Oliver allegedly informed Boston Cedar, Inc. that decking material from LP's Selma Plant was not included in the recall.  *Id*. at 3.  These contentions regarding Oliver's alleged misrepresentations are not included in the Michigan complaint.  *See* Michigan Complaint.  Instead, the factual allegations in the complaint only refer to misrepresentations regarding the product quality of the decking material.  *See* Michigan Complaint at 11-12.  Accordingly, the Court has no occasion, to address on this Motion, whether such a claim would be barred by the Settlement.  At this juncture the only issue is whether the claims asserted in the complaint filed in Michigan state court are Settled Claims.  The Court concludes that they are.

As a final point, the Court notes that LP may also be entitled to an award of attorneys' fees.  The Settlement Agreement provides that "[i]f any Releasing Party brings an action or asserts a claim against LP contrary to the terms of this Release," and does not within thirty days of notice of receiving notice of the Settlement "dismiss his or her action or claim and the action or claim is subsequently dismissed or decided in favor of LP," then "the Releasing party shall indemnify and hold harmless LP from any and all costs and expenses, including reasonable attorney's fees, incurred by LP in the defense of the action or claim."  Settlement at 26, § IV.E.  LP has not, however, submitted any time sheets to justify any particular award of attorneys' fees.  Accordingly, the Court denies LP's request for attorneys' fees without prejudice.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's Motion to Enforce the Settlement Agreement is GRANTED.  The Michigan Plaintiffs are hereby enjoined from asserting Settled Claims as defined by the Settlement, which includes all claims asserted in the complaint filed in Michigan

1 | state court.
2 |   **IT IS SO ORDERED**.
3 | Dated: January 23, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge