UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL POSTIER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LOUISIANA-PACIFIC CORP,<br><br>Defendant. | Case No. 09-cv-03290-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS.**<br><br>**Dkt. No. 142** |

## I.  INTRODUCTION

Before the Court is an Amended Motion for Attorneys' Fees and Costs (hereafter, "Motion" or "Amended Motion") filed by Defendant Louisiana-Pacific Corporation ("LP") against parties-in-interest Boston Cedar, Inc., Cheapskate Charlie's, LLC, Cabinets to Go, Inc. and Cal Garland d/b/a Meadow River Lumber (hereafter, "the Michigan Plaintiffs").  LP seeks an award of fees and costs pursuant to an indemnification provision in a Settlement Agreement that has been entered in the above-captioned action.  LP's first motion for attorneys' and costs was denied without prejudice because LP failed to present sufficient evidence supporting its request for fees.  *See* Dkt. No. 141.  This Motion is appropriate for decision without oral argument, and the hearing on May 9, 2014 is vacated.  *See* Civil L.R. 7-1(b).  For the reasons explained below, the Amended Motion is GRANTED in part and DENIED in part.

## II.  BACKGROUND

### A.  Brief Factual and Procedural Background[1]

The above-captioned lawsuit is a class action relating to allegedly defective decking and railing products.  The parties entered into a class action settlement (hereafter, "Settlement

---

[1] The Order Granting LP's Motion to Enforce Settlement provides a detailed overview of the factual background and procedural history of this case.  *See* Dkt. No. 137.

1  Agreement") whereby the class members agreed to release all "Settled Claims" arising out of the
2  defective product. *See* Dkt. No. 116-2 (Settlement Agreement).

3        On August 27, 2013, the Michigan Plaintiffs filed a lawsuit in the Circuit Court for the
4  County of Wayne, State of Michigan, alleging that they received an unsatisfactory settlement offer
5  from LP. LP removed the lawsuit to the United States District Court for the Eastern District of
6  Michigan, and then moved to dismiss the case on the basis of this Court's exclusive jurisdiction
7  over disputes arising out of the Settlement Agreement. The presiding judge in the Eastern District
8  of Michigan transferred the case to the Northern District of California, where it was related to the
9  above-captioned case and assigned to this Court. *See Cheapskate Charlie's LLC et al. v.*
10 *Louisiana-Pacific Corp.*, No. 13-5888-JCS (hereafter, "the *Cheapskate* action"). The Michigan
11 Plaintiffs have filed a First Amended Complaint with leave of the Court. *See id.*, Dkt. No. 32.

12       Around the same time LP filed the motion to dismiss in the Eastern District of Michigan,
13 LP filed a motion to enforce the Settlement Agreement in this case. *See* Dkt. No. 129. The Court
14 held a hearing on the motion to enforce on January 17, 2014. The Court granted the motion on
15 grounds that the Michigan Plaintiffs were "Class Members" as defined by the Settlement, and had
16 asserted only "Settled Claims" in the complaint filed in Michigan state court. *See* Dkt. No. 137.

17       The Settlement Agreement has an indemnification provision which enables LP to seek
18 attorneys' fees incurred in defending a claims covered by the Settlement Agreement. *See*
19 Settlement Agreement at 26 (Art. VI, § E). On February 6, 2014, LP filed its first motion for
20 attorneys' fees and costs seeking to recover $49,812.30. *See* Dkt. No. 138. The Court denied
21 LP's motion without prejudice because LP failed to submit satisfactory evidence in support for its
22 request for fees. *See* Dkt. No. 141.

23       **B.**    **Amended Motion for Attorneys' Fees and Costs**

24       LP brings this Amended Motion seeking fees and costs in the amount of $54,354.14. *See*
25 Dkt. No. 142 (Amended Motion). LP has incurred attorneys' fees from three separate law firms.
26 Womble Carlyle Sandridge & Rice, LLP represents LP with respect to general enforcement of the
27 Settlement Agreement, including enforcement proceedings in this district and litigating the
28 *Cheapskate* action in Michigan. Declaration of James E. Weatherholtz ("Weatherholtz Decl.) ¶ 5.

1  LP is represented by Warner Norcross & Judd LLP, which served as local counsel for the
2  *Cheapstake* action in Michigan. *Id*. ¶ 3. In addition, LP is represented by Gordon & Rees LLP,
3  which serves as local counsel for enforcement proceedings regarding the Settlement Agreement in
4  this District. *Id*. ¶ 7.

## III. DISCUSSION

### A. LP is entitled to All Costs and Attorneys' Fees Incurred in Defending the Claims Asserted in the Original Complaint Filed in the *Cheapskate* Action.

This Court has already held that LP is entitled to an immediate award of attorneys' fees pursuant to the terms of the Settlement Agreement. *See* Dkt. No. 141. Article VI.E of the Settlement Agreement provides:

> If any Releasing Party brings an action or asserts a claim against LP contrary to the terms of this Release, the counsel of record for such Releasing Party shall be provided with a copy of this Settlement. If such Releasing Party does not within thirty (30) days thereafter dismiss his or her action or claim and the action or claim is subsequently dismissed or decided in favor of LP, the Releasing Party shall indemnify and hold harmless LP from any and all costs and expenses, including reasonable attorneys' fees, incurred by LP in the defense of the action or claim.

Settlement Agreement at 26 (Art. VI, § E). The Court reasoned that the "claims" asserted in the original complaint filed in Michigan state court were "decided in favor of LP," and therefore, LP is entitled to "any and all costs and expenses, including reasonable attorneys' fees, incurred by LP in the defense of the action or claim." Dkt. No. 141 at 2-3.

In opposition to LP's Amended Motion for Attorneys' Fees and Costs, the Michigan Plaintiffs contend that granting LP any award of attorneys' fees would be inequitable and unreasonable. This argument is without merit. Courts in the Ninth Circuit have discretion "to refuse to enforce a contractual attorney's fee provision if an award of fees would be 'inequitable and unreasonable.'" *Anderson v. Melwani*, 179 F.3d 763, 766 (9th Cir. 1999) (citing *DeBlasio Constr. Inc. v. Mountain States Constr. Co.*, 588 F.2d 259, 263 (9th Cir. 1978) (upholding district court's denial of fees were both parties were to blame for the dispute)). Nevertheless, in this case, awarding fees to LP would not be inequitable or unreasonable because both parties should *not* be blamed for the meritless claims asserted in the original complaint in the *Cheapskate* action. These

claims pertained only to the quality of the decking material; they were Settled Claims that had been released by the Settlement Agreement. *See* Dkt. No. 141 at 2-3.

The Michigan Plaintiffs nonetheless argue that because the First Amended Complaint alleges that a LP employee misrepresented that certain decking material fell outside the scope of the Settlement Agreement one year after it was entered, it would be inequitable and unreasonable to grant LP's Motion. The Court disagrees. At this stage in the *Cheapskate* action, there is a mere allegation that a LP employee made a misrepresentation. Even if true, this allegation is wholly distinct from the allegations asserted in the original complaint−which only pertained to the quality of the decking material and said nothing about an LP employee making any representation one year after the Settlement Agreement was entered.

The Michigan Plaintiffs also contend that LP's fees should be limited to the fees incurred for the motion to enforce the settlement agreement filed in this Court. While the argument is not entirely clear, the Michigan Plaintiffs appear to contend that LP should not recover fees incurred in removing the complaint to the Eastern District of Michigan, and filing a motion to dismiss in that District. *See* Opposition at 6:9. This argument is without merit. The Michigan Plaintiffs have not cited any authority nor presented any compelling reason that would justify limiting LP's recovery in this manner. Indeed, Article IV.E of the Settlement Agreement provides that LP is entitled to "any and *all* costs and expenses, including reasonable attorneys' fees, incurred by LP in the defense of the action or claim." Settlement Agreement at 26 (Art. VI, § E) (emphasis added). Thus, LP is entitled to *all* attorneys' fees incurred while defending the claims asserted in the original complaint, including the fees incurred in removing the case to the Eastern District of Michigan and filing the motion to dismiss.

In addition, the Michigan Plaintiffs contend that LP should not be awarded any fees incurred prior to September 19, 2013, which is the day LP's counsel informed the Michigan Plaintiffs that it would seek attorneys' fees if the *Cheapskate* action was not dismissed within thirty days. *See* Weatherholtz Decl. Exh. D. This contention is also without merit.

On March 20, 2013, almost five months *before* the Michigan Plaintiffs filed the *Cheapskate* action, counsel for LP sent a complete copy of the Settlement Agreement to counsel

4

for the Michigan Plaintiffs. Article VI.E of the Settlement Agreement clearly entitles LP to seek fees in the event a Class Member files a Settled Claim covered by the Settlement Agreement. *See* Settlement Agreement at 26 (Art. VI, § E). At that time, the Michigan Plaintiffs either knew or should have known of LP's ability to seek attorneys' fees.

Moreover, after the Michigan Plaintiffs filed the Cheapskate action on August 27, 2013, they were expressly cautioned by LP's counsel that failure to withdraw their claims within thirty days could result in liability for attorneys' fees. On September 19, 2013, counsel for LP wrote to the attorney representing the Michigan Plaintiffs in the *Cheapskate* action:

> I write to caution your clients that, unless they voluntary [sic] dismiss the Michigan Lawsuit, with prejudice, within thirty (30) days of your electronic receipt of this letter, we will petition the courts to award LP all of its costs and attorneys' fees incurred in defending against the Michigan Lawsuit ….

Weatherholtz Decl., Exh. D. Although informed of the risks, the Michigan Plaintiffs nonetheless chose not to dismiss the claims within 30 days. Consequently, LP is entitled to recover all costs and attorneys' fees reasonably expended in defending the claims asserted in the original complaint, including those incurred prior to September 19, 2013.

**B.     The *Lodestar* Analysis**

To determine a reasonable award of attorneys' fees, courts employ the "lodestar" figure, which is calculated by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The party seeking an award of attorneys' fees bears the burden of establishing the reasonableness of both the hours worked and the rates claimed. *Blum v. Stenson*, 465 U.S. 886, 896 (1984). "When … the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee…." *Id*. at 897.

**1.     Reasonable Hourly Rates**

To determine a reasonable hourly rate of compensation for the attorneys involved in the litigation, the court "must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d

5

1   895, 908 (9th Cir. 1995) (internal quotations omitted).  Courts "should be guided by the rate
2   prevailing in the community for similar work performed by attorneys of comparable skill,
3   experience, and reputation." *Id*.  "Importantly, the fee applicant has the burden of producing
4   'satisfactory evidence' that the rates he requests meet these standards." *Gonzalez v. City of*
5   *Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013).

6   As noted above, LP has requested fees incurred from three separate law firms, each of
7   which has charged LP different rates.  The following represent the hourly rates LP seeks to
8   recover in the instant Motion:

- Warner Norcross & Judd LLP: $440 for Partners; $295 for Associates
- Gordon & Rees LLP: $425 for Partners; $295 for Associates
- Womble Carlyle Sandridge & Rice, LLP: $295 for Partners; $235 for Associates

Motion at 12; Declaration of Rebecca R. W. Monroe ("Monroe Decl.") ¶ 2.

Warner Norcross & Judd LLP served as local counsel for the *Cheapstake* action in Michigan state court and the Eastern District of Michigan.  Weatherholtz Decl. ¶ 3.  Kevin Dougherty is a partner at Warner Norcross & Judd LLP specializing in products liability defense.  He was admitted to the Michigan State Bar in 1990.  *Id*.  LP seeks the partner rate of $440 per hour for Mr. Dougherty.  Elizabeth Von Eitzen was admitted to the Michigan State Bar in 2006.  Although Ms. Von Eitzen is a partner at Warner Norcross & Judd LLP, LP seeks the associate rate of $295 per hour because Ms. Von Eitzen was an associate when she worked on this matter in 2013.  *Id*.

Gordon & Rees LLP served as local counsel for this action in the Northern District of California.  Weatherholtz Decl. ¶ 7.  Thomas Packer is a partner at Gordon & Rees LLP specializing in product liability defense.  He was admitted to the California State Bar in 1983.  LP seeks the partner rate of $425 for Mr. Packer.  *Id*.  Rebecca Monroe is an associate at Gordon & Rees LLP and was admitted to the California State Bar in 2010.  LP seeks the associate rate of $295 for Ms. Monroe.  *Id*.

Womble Carlyle Sandridge & Rice, LLP represents LP with respect to general enforcement of the Settlement Agreement, including enforcement proceedings in the Northern

6

District of California and the litigating the Cheapskate action in Michigan. Weatherholtz Decl. ¶ 5. James E. Weatherholtz is a partner at Womble Carlyle Sandridge & Rice, LLP specializing in products liability defense and class actions. He was admitted to the South Carolina State Bar in 1999. LP seeks the partner rate of $295 for Mr. Weatherholtz. *Id*. Ryan Gilsenan is an associate at the firm and was admitted to the South Carolina State Bar in 2006. LP seeks the associate rate of $235 per hour for Mr. Gilsenan. *Id*. LP also seeks an hourly rate of $120 for Catherine Anderson, who is either "a Legal Assistant or other non-lawyer professional." Weatherholtz Decl. Exh. F at 17.

The Michigan Plaintiffs do not challenge the reasonableness of any of the foregoing rates. Nevertheless, LP still bears the burden of proving the reasonableness of the hourly rates it requests. *See Blum*, 465 U.S. at 896. The issue is whether the prevailing rates "in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz*, 73 F.3d at 908. "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir.2010) (internal quotation marks omitted). In this case, there are two relevant communities, as litigation took place in both Michigan and in San Francisco.

In support of the rates charged for litigation in the Northern District of California, LP has presented evidence that Gordon Rees LLP typically charges $425 for partners and $295 for associates. Monroe Decl. ¶ 2. Moreover, courts in the Northern District of California have awarded: $700 per hour to an attorney with over twenty years of litigation experience such Mr. Packer (who requests $425 per hour), *Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013); $350 per hour for an attorney with fifteen years of experience such as Mr. Weatherholtz (who requests $295 per hour), *Monroe v. Steinfeld*, No. 11-2726 SBA (DMR), 2012 WL 1496204 (N.D. Cal. Mar. 22, 2012) *report and recommendation adopted*, 2012 WL 1497519 (N.D. Cal. Apr. 27, 2012); and $245 for attorneys with four to seven years of experience (Mr. Gilensan has seven to eight years of experience and requests $235 per hour), *In re HPL Technologies, Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 922 (N.D. Cal. 2005). Accordingly, the Court finds that the requested hourly rates of $425 per hour for Mr. Packer, $295 per hour for Mr.

1   Weatherholtz and Ms. Monroe, and $235 per hour for Mr. Gilensan, are reasonable.

2         LP also seeks a $120 hourly rate for Ms. Anderson, but fails to submit evidence indicating Ms. Anderson's credentials.  An hourly rate of $120 is commensurate with the rates generally awarded in this District for paralegals.  *See Zoom Elec., Inc. v. Int'l Bhd. of Elec. Workers, Local 595*, No. 11-1699 CW, 2013 WL 2297037, at *4 (N.D. Cal. May 24, 2013) (awarding $150 per hour to law clerks and paralegals).  Accordingly, the Court finds that a reasonable rate for Ms. Anderson is $120 per hour.

8         LP did not submit any evidence showing the reasonableness of the requested rates for litigating the *Cheapskate* action in Michigan.  In the absence of such evidence, the Court consulted a 2010 Survey published by the State Bar of Michigan,[2] which is often cited by courts in the Eastern District of Michigan when determining a reasonable hourly rate.  *See, e.g.*, *Potter v. Blue Cross Blue Shield of Michigan*, No. 10-14981, 2014 WL 1304327, at *3 (E.D. Mich. Mar. 31, 2014); *Kelly v. Corrigan*, 890 F. Supp. 2d 778, 788 (E.D. Mich. 2012); *City of Detroit v. TXU Energy Retail Co., L.P.*, No. 03-74279 DT, 2007 WL 551600, at *2 (E.D. Mich. Feb. 20, 2007). Exhibit 4 of the Michigan State Bar survey shows the quartiles and 95th percentiles for billing rates spread across years of practice.

17        LP requests a rate of $440 for Mr. Dougherty, who had approximately 23 years of experience when litigating the *Cheapskate* action in 2013.  The Michigan Bar Survey shows that the 75th and 95th percentile hourly rates for an attorney with 16 to 25 years of experience are $300 and $450, respectively.  Because Mr. Dougherty's 23 years of experience is close to the upper limit of this category (16 to 25 years), the Court finds that the requested hourly rate of $440 for Mr. Dougherty is reasonable.

23        LP requests a rate of $295 for Mr. Weatherholtz,[3] who had approximately 14 years of

---

[2] The survey is entitled, *2010 Economics of Law Practice; Attorney Income and Billing Rate Summary Report.*  The survey was published in January 2011 and may be found at www.michbar.org/pmrc/articles/0000146.pdf.

[3] Mr. Weatherholtz and Mr. Gilensan were involved in litigation for this matter in both San Francisco and Michigan.  The Court separately considers whether the requested rates for Mr. Weatherholtz and Mr. Gilensan are reasonable when compared to the prevailing rates in Michigan.

8

experience when litigating this case in 2013. The Michigan Bar Survey shows that the 75th and 95th percentile hourly rates for an attorney with 11 to 15 years of experience are $265 and $400, respectively. Because Mr. Weatherholtz's 14 years of experience is close to the upper limit of this category, the Court finds that the requested hourly rate of $295 for Mr. Weatherholtz is reasonable.

LP requests a rate of $295 for Ms. Von Eitzen and $235 for Mr. Gilensan, both of whom had approximately 7 years of experience when litigating the *Cheapskate* action in 2013. The Michigan Bar Survey shows that the 75th and 95th percentile hourly rates for an attorney with 6 to 10 years of experience are $240 and $300, respectively. Because LP's requested rate of $235 for Mr. Gilensan is below this range, the Court finds that this rate is reasonable. Nevertheless, Ms. Von Eitzen's requested fee of $295 per hour is close to the high end of this range ($300), while her 7 years of experience is close to the lower limit of this category (6 to 10 years). For this reason, the Court finds that LP's requested fee of $295 per hour for Ms. Von Eitzen is unreasonable, and will reduce this amount to $250 per hour.

### 2. Reasonable Number of Hours

To determine the number of hours reasonably expended on the litigation, courts must consider whether "the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The party seeking fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzales*, 729 F.3d at 1202; *see also Hensley*, 461 U.S. at 437 ("the fee applicant bears the burden of … documenting the appropriate hours expended"). Courts should "exclude from the lodestar amount hours that are 'excessive, redundant, or otherwise unnecessary.' " *Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1165 (N.D. Cal. 2012) (quoting *Hensley,* 461 U.S. at 434).

The Michigan Plaintiffs state three reasons why they believe the number of hours LP's attorneys billed in this matter are excessive and unreasonable. First, the Michigan Plaintiffs contend that most entries billed by attorneys from Warner, Norcross & Judd and Womble Carlyle Sandridge & Rice LLP are block-billed and/or vague. Second, they contend that LP's attorneys have billed for work that is outside the scope of LP's reasonable and necessary defense. Third, the

1    Michigan Plaintiffs contend that it is unreasonable to award LP attorneys' fees for the costs and
2    expenses related to administrative duties. LP did not respond to any of these arguments in its
3    reply brief. *See* Dkt. No. 151.

### a. Block Billing

The Michigan Plaintiffs contend that the vast majority of the time entries from Warner Norcross & Judd LLP and Womble Carlyle Sandridge & Rice, LLP are block-billed. This is true only in the strictest sense. While the entries often include more than one task that was performed, the aggregate time spent performing those tasks is most often a fraction of an hour. *See* Weatherholtz Decl. Exhs. E, F. LP's fee award will not be reduced because its attorneys provided detailed explanations of all the tasks they performed within one time entry.

### b. Outside Scope of Defense of Claims in Original Complaint

The Michigan Plaintiffs list several entries which they contend reflect billed hours that are outside of the scope of LP's reasonable and necessary defense of the claims in the original complaint. *See* Opposition, Exh. B. LP did not provide any response to this argument. The Court agrees that the fee award should not include attorney hours spent on filing stipulations to continue hearings that were at the request of LP, hours spent on withdrawing the first motion to enforce which was subsequently re-filed, or hours spent on LP's first motion for fees and costs which was denied because LP failed to include sufficient evidence. LP incurred most of these fees because of the inefficiencies of its own attorneys, and this cost should not be borne by the Michigan Plaintiffs. LP is also not entitled to recover fees for the 3.8 hours billed by Mr. Packer that correspond to redacted entries. The number of compensable hours will be reduced accordingly.[4]

LP is, however, entitled to recover for the hours spent on drafting the administrative motion to determine whether the cases should be related, even though the motion was never filed. In this

---

[4] The following amount of time will be subtracted from the following attorneys' hours:
  Mr. Dougherty      0.7 hours
  Mrs. Von Eitzen    0.2 hours
  Mr. Packer         6.9 hours
  Ms. Monroe         21.5 hours

1    District, parties are required to "promptly file" such a motion "[w]henever a party knows or learns
2    that an action … removed to this district is … related to an action which is or was pending in this
3    District…." Civil L.R. 3-12(b).[5]  Before LP filed the motion, the cases were related by order of
4    the Court.  *See* Dkt. Nos. 25, 30.  LP is nonetheless entitled to its fees.

### c.   Fees for Administrative Duties

The Michigan Plaintiffs next contend that LP is seeking $1,052.50 in fees for administrative duties that are not reasonably charged to clients.  The Court agrees that LP is not entitled to recover costs of clerical duties such as making copies and filing, as those costs are generally considered office overhead.  *Sheffer v. Experian Info. Solutions, Inc.*, 290 F.Supp.2d 538, 549 (E.D. Pa. 2003).  Nevertheless, the entries which the Michigan Plaintiffs consider "administrative" are not for such clerical-type tasks.  *See* Opposition, Exh. C.  Rather, the entries primarily reflect paralegal hours spent preparing the necessary work for Mr. Weatherholtz to appear *pro hac vice* in Michigan.

The Michigan Plaintiffs are correct to note that several district courts consider the <u>court fees</u> to appear *pro hac vice* to be the expense of counsel, and not the expense of the client, as they are not included in the list of taxable costs under 28 U.S.C. § 1920.  *See, e.g.*, *Schmitz-Werke GmbH %8f Co. v. Rockland Indus., Inc.*, 271 F. Supp. 2d 734, 735 (D. Md. 2003) ("The *pro hac vice* fee is an expense of counsel, not the client, and is thus not recoverable.").  This Court disagrees, and awards such costs.

### 3.   Final Calculation of Fees and Costs

The Court calculates the final award of attorneys' fees to equal $, as shown by the following table:

| Attorney/Paralegal | Hours | Rate | Total Fees |
|---|---|---|---|
| Mr. Weatherholtz | 56.7 | $295 | $16,726.50 |
| Mr. Gilensan | 30.4 | $235 | $7,144 |

---

[5] Cases are related if "[t]he actions concern substantially the same parties" and "[i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different judges."  Civil L.R. 3-12(a).

| | | | |
|---|---|---|---|
| Ms. Anderson | 15.7 | $120 | $1,884 |
| Mr. Dougherty | 17.1 (reduced from 17.8) | $440 | $7,524 |
| Ms. Von Eitzen | 7 (reduced from 7.2) | $250 (reduced from $295) | $1,750 |
| Mr. Packer | 3 (reduced from 9.9) | $425 | $1,275 |
| Ms. Monroe | 16.9 (reduced from 38.4) | $295 | $4,985.50 |
| | | | **TOTAL = $41,289.00** |

Moreover, the Court will award the full amount of costs requested by LP, which the Court calculates to be $3,108.14. These costs include: (1) the filing fee for the Eastern District of Michigan ($400); (2) the cost of Mr. Weatherholtz's travel to and attendance at the hearing on LP's motion to dismiss in Detroit ($823); and (3) the cost of Mr. Weatherholtz's travel to and attendance at the hearing on LP's motion to dismiss in San Francisco ($1,885.14). Weatherholtz Decl. ¶¶ 4, 6.

Accordingly, LP is entitled to a total award of fees and costs in the amount of $44,397.14 ($41,289.00 + $3,108.14 = $44,397.14).

## IV.  CONCLUSION

For the foregoing reasons, LP's Motion for Attorneys' Fees and Costs is GRANTED in part and DENIED in part. LP is entitled to an award of attorneys' fees and costs in the amount of $44,397.14.

**IT IS SO ORDERED.**

Dated: April 29, 2014

JOSEPH C. SPERO
United States Magistrate Judge